Filed 11/4/13  In re H.N. CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| In re H.N., a Person Coming Under the Juvenile Court Law. | |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | D063988 |
| Plaintiff and Respondent, | (Super. Ct. No. SJ10796C) |
| v. | |
| PATRICK D., | |
| Defendant and Appellant. | |
| In re C.C. et al., Persons Coming Under the Juvenile Court Law. | |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | D063990 |
| Plaintiff and Respondent, | (Super. Ct. No. SJ12250B) |
| v. | |
| PATRICK D. et al., | |
| Defendants and Appellants. | |

CONSOLIDATED APPEALS from orders of the Superior Court of San Diego County, Kenneth J. Medel, Judge. Affirmed.

Kathleen Murphy Mallinger, under appointment by the Court of Appeal, for Defendant and Appellant Patrick D.

Monica Vogelman, under appointment by the Court of Appeal, for Defendant and Appellant Gabriella C.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel and Dana C. Shoffner, Deputy County Counsel, for Plaintiff and Respondent.

Dependency Legal Group of San Diego, Tilisha Martin and Alexandra Abbey, for minors.

Patrick D. appeals after the juvenile court denied his Welfare and Institutions Code section 388 petitions requesting an additional period of reunification and terminated his parental rights to his daughters, H.N. (born 2006) and C.C. (born 2012). (Undesignated statutory references are to the Welfare and Institutions Code.) C.C.'s mother, Gabriella C., joins in Patrick's arguments pertaining to C.C. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

1. H.N.

H.N.'s mother died in early 2011. In late 2011, when H.N. was about five years old, the San Diego County Health and Human Services Agency (the Agency) filed a petition under subdivisions (b) and (g) of section 300 alleging Patrick's drug use and domestic violence toward his girlfriend, Gabriella, endangered H.N. At the detention hearing, the juvenile court dismissed the section 300, subdivision (g) allegation and found Patrick had presumed father status. The court later detained H.N. with a maternal cousin.

2

The caretaker reported that H.N.'s visits with Patrick were unstructured, that H.N. ran around doing what she wanted and that Patrick gave her candy, soda and ice cream.

In January 2012, the court issued a no contact order based on evidence Patrick threatened to bring a shotgun to a visit, did not show up for drug testing, was angry with the social worker, yelled insults in the lobby of the Agency's office and had a knife in his pocket at a visit. Patrick was also arrested for being under the influence of a controlled substance.

At the March 2012 jurisdiction and disposition hearing, the juvenile court made a true finding on the petition, declared H.N. a dependent, removed her from Patrick's custody and placed her in a relative's home. It also found the case plan appropriate and ordered the Agency to provide Patrick with services. Patrick completed a residential detoxification program shortly after the court assumed jurisdiction, but tested positive for amphetamine/methamphetamine a few days later. The court continued the no contact order based on Patrick's positive drug tests and his failure to appear at the hearing. In June 2012, the Agency received a referral on Patrick's newborn child, C.C., after C.C. and Gabriella tested positive for methamphetamine and marijuana.

At the six-month review hearing in October 2012, the court terminated Patrick's reunification services, set the permanent plan hearing, lifted the no contact order and ordered supervised visits. Patrick was arrested in November and December 2012. After H.N.'s relative caregiver expressed she was no longer willing to provide care for H.N., the Agency filed a section 387 petition and moved H.N. to a foster home. The new foster family had an approved adoptive home study and wanted to adopt H.N. In February

3

2013, Patrick set the section 366.26 hearing for trial and the court suspended his visits with H.N. pending the trial date. In March 2013, the social worker moved C.C. into the foster home with H.N. The foster parents wished to adopt both girls.

On the day of the contested section 366.26 hearing in early April 2013, Patrick filed a section 388 petition seeking six more months of reunification time. He claimed to be clean and sober since his 2012 incarceration and indicated that he had entered a six-month residential drug treatment program about a week earlier. The court set a hearing on the petition, heard Patrick's testimony and gave the social worker discretion to allow supervised visits with H.N.

At the end of April 2013, the court heard further testimony from Patrick, admitted reports and heard argument on the section 388 petition. The juvenile court concluded that Patrick had not shown a significant change of circumstances and it was not in H.N.'s best interest to return to Patrick. Patrick timely appealed.

2. C.C.

The Agency filed a dependency petition on C.C.'s behalf under section 300, subdivision (b). Gabriella admitted that she used methamphetamine three times a week throughout her pregnancy and used marijuana on a daily basis. In June 2012, the juvenile court made a prima facie finding on the petition and detained C.C. in out-of-home care. At a contested disposition hearing in September 2012, the juvenile court declared C.C. a dependent, placed her in foster care, and ordered no reunification services for Gabriella based on her failure to reunify with another child in 2009.

In February 2013, Gabriella met C.C. for the first time since her birth. Gabriella had a second visit with C.C. while incarcerated, but she made no attempts to visit C.C. after her release from jail in March 2013. Patrick had two visits with C.C. while incarcerated in March 2012 and March 2013. On the day of the contested section 366.26 hearing in early April 2013, Patrick filed a section 388 petition seeking reunification services. At a combined hearing for both daughters, Patrick admitted that he never contested C.C.'s removal and never asked for reunification services until the date of the contested section 366.26 hearing. The juvenile court found no significant change in circumstances, denied the section 388 motion and terminated parental rights. After Patrick and Gabriella timely appealed the orders as to C.C., we ordered that the appeals be considered together and granted Patrick's request that the appeals be consolidated.

DISCUSSION

Patrick contends the juvenile court abused its discretion in denying his section 388 petition requesting an additional reunification period with his daughters. Because the denial of his section 388 petitions must be reversed, he claims the termination of his parental rights must also be reversed, and the cases remanded to the juvenile court. We disagree.

Section 388 gives the juvenile court discretion to modify a previously made order when the moving party presents evidence of changed circumstances and demonstrates that the requested modification is in the child's best interests. (*In re Stephanie M.* (1994) 7 Cal.4th 295, 317.) "In determining whether the petition makes the necessary showing,

5

the court may consider the entire factual and procedural history of the case." (*In re Justice P.* (2004) 123 Cal.App.4th 181, 189.)

When a section 388 petition is filed after family reunification services have been terminated, the dependency court's overriding concern is the child's best interests. (*In re Stephanie M.*, *supra*, 7 Cal.4th at p. 317.) The parent's interests in the care, custody and companionship of the child are no longer paramount, and the focus shifts to the needs of the child for permanency and stability. (*Ibid.*) We may disturb the dependency court's exercise of its discretion only in the rare case when the court has made an arbitrary, capricious or "patently absurd" determination. (*Id.* at p. 318.) We do not inquire whether substantial evidence would have supported a different order, reweigh the evidence or substitute our judgment for that of the dependency court. (*Id.* at pp. 318-319.) There is no abuse of discretion where substantial evidence supports the order. (*In re Daniel C. H.* (1990) 220 Cal.App.3d 814, 839.)

Here, the juvenile court credited Patrick for his decision to enter a residential drug treatment program for the purpose of bettering himself. It noted that Patrick's sobriety probably resulted from his incarceration and was not a choice he had made. The court commented that Patrick's long-standing drug use "permeated his life" and that such individuals often come to believe that their abnormal behavior is actually normal and acceptable. As an example of this, the court cited Patrick's belief that he was a "great dad."

The court noted that this was Patrick's fourth drug treatment program and that the measure of change was how someone did when they were on their own, not when they were compelled by the criminal justice system. It found that Patrick made an effort to change, but the results of his efforts would not be known until Patrick was left to his own devices for a significant amount of time. Substantial evidence supports the court's finding that Patrick's circumstances had not changed such that reinstating reunification services and delaying permanency were in H.N.'s or C.C.'s best interests.

Patrick has an extensive criminal history in California, New Jersey, Oregon, and Virginia, with felony drug possession convictions in California, Oregon and Virginia. After H.N.'s removal, Patrick suffered three arrests, twice for being under the influence. Patrick had an almost 20-year history of drug use and considered himself an addict. At the time of the section 388 hearing, Patrick had been sober for five months. His first date of sobriety was November 28, 2012, when his latest arrest resulted in his incarceration.

Patrick's case plan required him to attend therapy, complete parenting classes and participate in both drug treatment and anger management. While Patrick was currently in therapy, he admitted that he had not completed anger management, parenting, or his current drug treatment program. Patrick's drug program case manager relayed that Patrick presented as "hostile" and having "a short fuse." His probation officer also opined that Patrick would most likely receive a prison sentence at his upcoming sentencing hearing on federal charges.

7

We commend Patrick's participation in his current drug treatment program. In light of his 20-year history of drug addiction, however, his five months of sobriety does not establish that his addiction is under control or that he will be able to maintain his sobriety once he completes the residential program. Moreover, Patrick's efforts came months after reunification services had been terminated, when "the focus of the dependency proceedings had shifted from reunification to the child's need for a stable and permanent home." (*In re Casey D.* (1999) 70 Cal.App.4th 38, 48.) Patrick was able to show only that his circumstances were changing, not that they had changed within the meaning of section 388.

The evidence also supported the juvenile court's finding that it would not be in H.N.'s and C.C.'s best interests to reinstate reunification services. H.N.'s psychological evaluator diagnosed her with posttraumatic stress disorder, major depressive disorder, disruptive behavior disorder and neglect of child. The evaluator found that H.N.'s emotional and behavioral functioning appeared to be "directly linked to her history of neglect and witnessing domestic violence." While H.N.'s progress was slow, the evaluator expected improvement with 6 to 12 more months of treatment and a stable long-term placement. H.N. told the social worker that she loved her foster parents and liked living with them. She also stated "[m]y father is a crystal meth user, he is scary."

C.C. has spent her entire life in foster home care. Since she was about nine months old, C.C. has lived with H.N. in their prospective adoptive home. Her prospective adoptive parents considered C.C. as part of their family and wished to adopt her and H.N. The social worker concluded that no exceptions to adoption existed and

8

that permanency was paramount for H.N. and C.C.  The social worker recommended the girls' foster home as a permanent, stable home for the girls to be adopted.

This evidence supported the juvenile court's denial of Patrick's section 388 petitions.  Patrick reargues the evidence and asks us to reweigh it.  That is not our role. (*In re Matthew S.* (1988) 201 Cal.App.3d 315, 321.)  The record does not show it was in the girls' best interests to reinstate Patrick's reunification services based on his attempt to become adequate at this late stage of the proceedings.  On this record, juvenile court did not abuse its discretion by refusing to prolong the proceedings.

DISPOSITION

The orders denying Patrick's section 388 petitions and terminating the parental rights of Patrick and Gabriella are affirmed.

McINTYRE, J.

WE CONCUR:

NARES, Acting P. J.

McDONALD, J.